NOT DESIGNATED FOR PUBLICATION

No. 120,313

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interests of A.L. and L.L.,
Minor Children.

MEMORANDUM OPINION

Appeal from Johnson District Court; KATHLEEN SLOAN, judge. Opinion filed May 31, 2019.
Affirmed.

*Richard P. Klein*, of Olathe, for appellant natural mother.

*Elizabeth A. Billinger*, assistant district attorney, and *Stephen M. Howe*, district attorney, for
appellee.

Before GARDNER, P.J., ATCHESON and SCHROEDER, JJ.

PER CURIAM:  L.A. (Mother) appeals the district court's order terminating her
parental rights to her daughters, A.L. and L.L. Mother contends the State produced
insufficient evidence to prove she was an unfit parent or that her unfitness was unlikely to
change in the foreseeable future. Mother also contends the district court abused its
discretion by finding termination of her parental rights was in the children's best interests.
We find the decision to terminate Mother's parental rights is supported by clear and
convincing evidence and also in the children's best interests. We affirm.

1

In November 2013, the State filed a child in need of care (CINC) petition after a domestic violence incident between Mother and Father; thus, starting long and tortured attempts to help the family, ultimately to no avail.

In March 2014, the district court adjudicated A.L. and L.L. as CINCs, and offered Mother a six-month maintenance at home plan. One month later, Mother tested positive for drinking alcohol in violation of her probation that stemmed from her third conviction of driving under the influence (DUI). The violation resulted in her incarceration in jail for nine months. The district court placed A.L. and L.L. in the custody of the Kansas Department for Children and Families (DCF). A few weeks later, DCF placed the children with a paternal aunt, and the district court offered Mother a six-month reintegration plan.

In October 2014, Mother was released from jail and served the remainder of her sentence on house arrest. The district court extended the reintegration plan. In December 2014, Mother successfully completed reintegration, and the district court placed A.L. and L.L. back in her care.

At emergency hearings in late January and early March 2015, the district court received reports of Mother's missed meetings with her KVC case manager, failed alcohol tests, Mother's continued alcohol consumption, and Mother driving without a license, as well as housing, employment, and domestic violence concerns. The district court removed the children from Mother's care and in late March 2015 placed them back in DCF custody.

The State moved to terminate the parental rights of Mother and Father in September 2015 and conducted a trial in December 2015. In July 2016, the State

presented additional evidence showing police contact with Mother for domestic violence incidents involving Father, continued alcohol consumption by Mother, and Mother driving without a license. The district court also found Father to be the natural parent of both A.L. and L.L.

A week later, Mother gave birth to A.A. While she named another man as A.A.'s father, during a separate CINC proceeding the court determined Father was A.A.'s natural parent. The State filed a CINC case involving A.A. in August 2016, but it was later dismissed. A.A. is not included in this appeal as the record reflects he lives with his grandmother in Africa.

The district court issued a memorandum decision in October 2016 terminating the parental rights of Mother and Father for both A.L. and L.L., which Mother appealed. In April 2017, a panel of this court remanded Mother's appeal to the district court for an evidentiary hearing to look into the CINC case involving A.A., which the district court had dismissed in March 2017. In May 2017, the district court vacated the termination of Mother's and Father's parental rights and ordered a new reintegration plan.

Over the next two months, Mother failed several alcohol tests administered by her probation officer, but she maintained those failed tests resulted from drinking too much Nyquil. On July 22, 2017, Mother was involved in a single vehicle accident. The investigating officer later testified Mother left the scene. The officer found her, she submitted to a preliminary breath test, and she tested positive for alcohol above the legal limit. The officer arrested Mother for her fifth DUI.

After bonding out of jail, Mother missed and/or failed several more alcohol tests and the court placed her back in custody in November 2017. She remained there until April 10, 2018, when the judge in her criminal case released her on probation and reminded her, in part, that driving without a license would be a probation violation.

Within a week or so, the remote breath unit required under Mother's probation took a photo of Mother in the driver's seat of the vehicle. At first, Mother denied driving but she later admitted to her probation officer she had been driving. The district court revoked Mother's probation and she returned to jail to serve the remainder of her underlying sentence.

The State filed the current motion to terminate parental rights in December 2017, and the district court held an evidentiary hearing seven months later on July 27, 2018. The evidence showed that since the case began in November 2013:

- Mother continued to use alcohol and had multiple DUI convictions;
- Mother relapsed many times, despite repeated promises to do better and seek treatment for alcohol abuse and mental health;
- Mother testified after being released from custody in November and December 2015 she intended to start treatment immediately, but Mother provided no proof at the termination hearing she had completed any programs;
- KVC provided Mother with information about alcohol assessments and treatment as well as mental health treatment; worked with her on ensuring visitation with the children fit with her schedule; tried to get therapeutic services in place for the children to transition them for reintegration; and worked with Mother on several reintegration plans;
- Mother failed to address her alcohol addiction by continuing to use and abuse alcohol and consistently failed to be truthful with the involved service agencies and the district court;
- Mother continued to be involved with Father, despite their history of domestic violence and her assurances to the district court she would not be involved with him;

4

- Mother continued to drive without ever obtaining a valid driver's license;
- Mother had successfully completed only one of her reintegration plans in December 2014, and the district court removed the children again and placed them in DCF custody a few months later; and
- Mother provided no proof she had completed or maintained any of the tasks on her second or third reintegration plans.

In a memorandum decision, the district court found by clear and convincing evidence Mother was statutorily unfit as a parent because:

- Mother's "use of intoxicating liquor . . . of such duration" rendered her "unable to care for the ongoing physical, mental or emotional needs of her children";
- "Reasonable efforts" made by the involved service agencies had been unable to "rehabilitate the family";
- Mother had failed to "adjust [her] circumstances, conduct or conditions to meet the needs" of her children;
- Mother had failed to complete three separate plans designed for reintegration and rehabilitation of the family;
- Mother's conditions were unlikely to change in the immediate or foreseeable future; and
- It was in the best interests of A.L. and L.L. to terminate Mother's parental rights.

Father is not a party to this appeal and any finding by the district court addressing Father's parental rights are not included in this decision.

On appeal, Mother contends: (1) there was insufficient evidence to find by clear and convincing evidence she was unfit and the condition was unlikely to change in the foreseeable future; and (2) the district court abused its discretion in determining termination was in A.L.'s and L.L.'s best interests.

*Standard of Review*

A parent has a constitutionally recognized right to a parental relationship with his or her child. See *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *In re B.D.-Y.*, 286 Kan. 686, 697-98, 187 P.3d 594 (2008) (citing *Santosky*, 455 U.S. at 758-59). Accordingly, the State may terminate parental rights for a child only upon clear and convincing proof of parental unfitness. K.S.A. 2018 Supp. 38-2269(a); *Santosky*, 455 U.S. at 769-70; *In re R.S.*, 50 Kan. App. 2d 1105, Syl. ¶ 1, 336 P.3d 903 (2014).

When we review a district court's termination of parental rights, we view all the evidence in the light most favorable to the State to determine whether a rational fact-finder could have found it highly probable by clear and convincing evidence parental rights should be terminated. See *In re K.W.*, 45 Kan. App. 2d 353, 354, 246 P.3d 1021 (2011). In making this determination, we will not weigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact. *In re B.D.-Y.*, 286 Kan. at 705.

The Revised Kansas Code for Care of Children provides the court may terminate parental rights after it has adjudicated a child as a CINC. K.S.A. 2018 Supp. 38-2269(a). The statute lists nonexclusive factors the court must consider in determining unfitness. K.S.A. 2018 Supp. 38-2269(b). The court must also consider a separate list of nonexclusive factors when a child is not in the parent's physical custody. K.S.A. 2018

Supp. 38-2269(c). Any one of the factors in K.S.A. 2018 Supp. 38-2269(b) or (c) may, but does not necessarily, establish grounds for termination of parental rights. K.S.A. 2018 Supp. 38-2269(f).

*Finding of Unfitness*

Here, the district court found Mother to be unfit based on four statutory grounds set forth in K.S.A. 2018 Supp. 38-2269(b)(3), (b)(7), (b)(8), and (c)(3). The statute provides:

"(a) When the child has been adjudicated to be a child in need of care, the court may terminate parental rights or appoint a permanent custodian when the court finds by clear and convincing evidence that the parent is unfit by reason of conduct or condition which renders the parent unable to care properly for a child and the conduct or condition is unlikely to change in the foreseeable future.

"(b) In making a determination of unfitness the court shall consider, but is not limited to, the following, if applicable:

. . . .

(3) the use of intoxicating liquors or narcotic or dangerous drugs of such duration or nature as to render the parent unable to care for the ongoing physical, mental or emotional needs of the child;

. . . .

(7) failure of reasonable efforts made by appropriate public or private agencies to rehabilitate the family;

(8) lack of effort on the part of the parent to adjust the parent's circumstances, conduct or conditions to meet the needs of the child;

. . . .

"(c) In addition to the foregoing, when a child is not in the physical custody of a parent, the court, shall consider, but is not limited to, the following:

. . . .

(3) failure to carry out a reasonable plan approved by the court directed toward the integration of the child into a parental home."

7

Mother contends the issue boils down to whether "the mere use of alcohol makes a parent unfit." Although Mother admits she has a long history of alcohol abuse, she claims she substantially completed her reintegration plan, consistently demonstrated an ability to care for her children, and showed the stability required to provide for her children. The State agrees Mother's history of alcohol abuse is an "overriding theme" present for each of the district court's findings of unfitness but contends other factors also establish Mother's unfitness as a parent. Because the district court's findings address more than just excessive alcohol abuse, we will discuss all of the statutory grounds for unfitness cited by the district court. Our task is to determine whether each of the findings is supported by clear and convincing evidence, though only one is required to support the termination of Mother's rights.

*Alcohol abuse*

Mother argues the district court erred in finding her unfit because of her alcohol use. She does not dispute she struggles with alcohol addiction but claims her alcohol use did not keep her from caring for her children.

However, clear and convincing evidence supports the district court's finding Mother was unfit because her alcohol use was of such duration or nature it rendered her unable to care for the ongoing physical, mental, or emotional needs of the children. See K.S.A. 2018 Supp. 38-2269(b)(3).

Mother's alcohol use has affected her ability to care for her children since before this case began. Before the State filed the CINC petition, Mother had three DUI convictions and had no valid driver's license. Shortly after the district court made the CINC findings, Mother violated her probation by testing positive for alcohol use and began a nine-month jail sentence and was clearly unable to provide for the needs of her children. After being released on house arrest, Mother failed many alcohol tests,

8

consistently drove without a valid driver's license, and had several police encounters in which they questioned her sobriety. At the time of the termination trial in July 2018, Mother was back in jail after violating her probation again when she consumed alcohol and drove illegally. These persistent and ongoing periods of incarceration stem from Mother's continued abuse of alcohol and her poor decision making. As a result, her children have been in out-of-home placement for four and a half of the past five years.

Andrew Staum, the KVC case manager, testified: "[Mother's] struggle with alcohol has impacted her ability to have contact with her children, to see her children. It's impacted her probation, it's impacted her ability to not be incarcerated. So it's hard to believe she will put her children's needs first when she is not doing that now."

*Other statutory grounds of unfitness*

Mother does not directly dispute the remaining grounds of unfitness cited by the district court, but she claims she substantially completed her reintegration plan by maintaining employment and housing throughout the case, participating in regular and "routinely appropriate" visits with A.L. and L.L., going to therapy and "numerous outpatient treatment programs to deal with her drinking problem," and having a transportation plan that did not require her to drive. The State agrees Mother successfully completed the employment portion of the most recent reintegration plan but disputes Mother's remaining contentions.

A review of the record reveals clear and convincing evidence of Mother's unfitness as a parent because of the remaining factors identified by the district court. Under K.S.A. 2018 Supp. 38-2269(b)(7), the district court shall consider "failure of reasonable efforts made by appropriate public or private agencies to rehabilitate the family." Staum testified about notable efforts made to help Mother in completing her case plan tasks. Because of her incarceration, Mother could not successfully complete those tasks. Staum also

9

testified about the children beginning therapy in anticipation of reintegration with Mother several times, but those sessions stopped once Mother violated her probation and went back to jail.

Under K.S.A. 2018 Supp. 38-2269(b)(8), the district court considers "lack of effort on the part of the parent to adjust the parent's circumstances, conduct or conditions to meet the needs of the child." Mother testified inconsistently about her sobriety in that she would first claim she had not been drinking alcohol but later admit she had been drinking. At the initial case plan meeting with KVC for her third reintegration plan, Mother told Staum she was sober and on medication for mental health. About two weeks later, Mother called Staum and told him the police had arrested her for a DUI and a violation of her probation. Mother's probation officer, Natalie Donovan, testified Mother had rescheduled, missed, and failed many UA and ethyl glucuronide (EtG) tests. Mother promised many times throughout the case she had "changed" and would try to seek treatment for mental health and substance abuse, yet she never provided proof of completing any such treatment. The record supports Mother's lack of change to meet the needs of her children.

Finally, under K.S.A. 2018 Supp. 38-2269(c)(3), the district court shall consider Mother's "failure to carry out a reasonable plan approved by the court directed toward the integration of the child into a parental home." Mother successfully completed her first reintegration plan, but she did not substantially complete any of the tasks on subsequent reintegration plans offered by the district court. Mother claims she provided a transportation plan to KVC, but Staum testified Mother never provided a formal plan to KVC. Even so, Mother continually violated any transportation plan she provided as she was repeatedly caught driving without a license. Mother also violated her probation by failing alcohol tests and had several interactions with law enforcement. At the time of trial, Mother had not seen her children since December 2016 because she repeatedly

10

failed at attempts for reintegration. The record supports the district court's finding Mother failed to carry out a reasonable plan to allow reintegration of the children into her home.

*Foreseeable future*

Clear and convincing evidence must also support the district court's finding the conduct or condition rendering Mother unfit is unlikely to change in the foreseeable future. K.S.A. 2018 Supp. 38-2269(a). In gauging the foreseeable future, we use "child time" as the measure. Children experience the passage of time in a way that makes a month or a year seem considerably longer than it would for an adult, and that difference in perception typically tilts toward a prompt, permanent disposition. K.S.A. 2018 Supp. 38-2201(b)(4); *In re M.B.*, 39 Kan. App. 2d 31, 45, 176 P.3d 977 (2008); *In re J.S.*, No. 120,193, 2019 WL 1967952, at *4 (Kan. App. 2019) (unpublished opinion) (citing *In re G.A.Y.*, No. 109,605, 2013 WL 5507639, at *1 [Kan. App. 2013] [unpublished opinion] ["'child time'" differs from "'adult time'" in care proceedings "in the sense that a year . . . reflects a much longer portion of a minor's life than an adult's"]).

After L.L. was born in 2013, Mother had custody for two months before the CINC petition was filed in November 2013 and the State intervened in her care. In October 2014, Mother successfully completed her reintegration plan, but the district court placed A.L. and L.L. back in DCF custody four months later. At the termination trial, L.L. was about two months shy of turning five years old, thus, L.L. has been out of Mother's care nearly all of her life. A.L. was born in December 2009 and is now 10 years old, thus, she has also spent a majority of her life—almost half of it—outside of Mother's home.

The record reflects Mother continued to violate her probation by drinking alcohol and driving illegally. Her actions led to long periods of incarceration, despite her promises to change and work toward permanency for her children. The district court questioned Mother's credibility and her ability to maintain sobriety. The clear and

11

convincing evidence presented showed Mother's conditions of unfitness were unlikely to change in the immediate or foreseeable future.

*Best interests finding*

Upon making a finding of unfitness of the parent, the district court must consider whether "termination of parental rights . . . is in the best interests of the child." K.S.A. 2018 Supp. 38-2269(g)(1). In making such a decision, the court gives primary consideration to the physical, mental, and emotional needs of the child. K.S.A. 2018 Supp. 38-2269(g)(1). In making the best interests determination, a court must consider the costs to a child's development by remaining in the current situation. *In re K.R.*, 43 Kan. App. 2d 891, 904, 233 P.3d 746 (2010).

We review a court's best interests determination for an abuse of discretion. An abuse of discretion

> "occurs when no reasonable person would agree with the district court or the district court premises its decision on a factual or legal error. In determining whether the district court has made a factual error, we review any additional factual findings made in the best-interests determination to see that substantial evidence supports them. [Citation omitted.]" *In re R.S.*, 50 Kan. App. 2d at 1116.

Mother contends the district court abused its discretion by not considering the physical, mental, or emotional needs of the children. Mother claims the bond she has with her children "cannot be broken" and the district court should have considered making more attempts at reintegration or, in the alternative, placing A.L. and L.L. with their grandmother. The State points out Mother presented no evidence at trial, nor cites any in her brief, about how continuing to attempt reintegration would serve the children's best interests or how placement with their grandmother would be in their best interests.

In fact, there was substantial evidence at trial to show A.L. and L.L. would benefit significantly from moving toward permanency without Mother's continued presence in their lives. A.L. and L.L. displayed negative behaviors before and after visits with Mother, and Staum testified neither child asked for Mother when she was not around. Again, Mother has not visited with the children since December 2016. L.L. suffered from developmental delays that improved while in foster care.

We find a reasonable person would agree with the district court's conclusion termination was in the best interests of the children. Thus, we find no abuse of discretion in the district court's finding that termination was in A.L. and L.L.'s best interests.

Affirmed.